DJW/byk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MIAMI TRIBE OF OKLAHOMA,

                Plaintiff,                    Civil Action

v.                                        Case No. 03-2220-DJW

UNITED STATES OF AMERICA,
et al.,

                Defendants.

## MEMORANDUM AND ORDER

Plaintiff Miami Tribe of Oklahoma ("Miami Tribe") has filed this action pursuant to the Administrative Procedures Act,[1] seeking judicial review of the Department of the Interior's Bureau of Indian Affairs' ("BIA") decision denying James E. Smith's application to gift a portion of his interest in restricted land. Smith seeks to convey one-third of his 3/38 undivided interest in a thirty-five acre allotment known as the Maria Christiana Miami Reserve No. 35 to Miami Tribe. The parties have consented to the exercise of jurisdiction by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Court reverses the BIA's denial of Smith's request to transfer a portion of his interest to Miami Tribe.

## I.    Facts

---

[1] 5 U.S.C. §§ 702-706.

James E. Smith ("Smith"), a member of the Miami Tribe, holds a 3/38 restricted undivided interest in the Maria Christiana allotment, Miami No. 35 ("Miami Reserve"), located in Miami County, Kansas. He desires to gift transfer one-third of his 3/38 undivided interest to Miami Tribe. Smith inherited his 3/38 undivided interest in the Miami Reserve through his tribal ancestor Maria Christiana DeRome, who was originally granted a restricted fee patent for restricted allotment of 200 acres dated December 15, 1859.[2] The 1859 Miami Reserve land patent issued to the infant Maria Christiana DeRome provided that the lands "shall never be sold or conveyed without the consent of the Secretary of the Interior, for the time being."

Over time, the original 200-acre allotment has been reduced to its present size of approximately 35 acres. After Maria Christiana DeRome died in 1860, her parents sold 120 of the original 200 acres with the approval of the Secretary of the Interior. In 1986, Midwest Investment Properties, Inc. filed a partition action on a claim of adverse possession to ownership of the unrestricted interest in the remaining 80 acres of the allotment. The Court ordered the partitioning of the 80 acres into two tracts consisting of 45 acres to Midwest Investment Properties, Inc. and 35 acres to the Indian owners in restricted fee title.[3]

In 1995, the BIA denied a request by Earlene Smith Downs, one of Smith's relatives and owner of an interest in the Miami Reserve property, to convey by gift one percent of her undivided interest to Miami Tribe.[4] In denying her request, the BIA noted that Ms. Downs was not a member of Miami Tribe

---

[2]The Maria Christiana Miami Reserve No. 35 has a long and intricate litigation history. *See Miami Tribe of Okla. v. United States*, 927 F. Supp. 1419 (D. Kan. 1996); *Miami Tribe of Okla. v. United States*, 5 F. Supp. 2d 1213 (D. Kan. 1998); *State ex rel Graves v. United States*, 86 F. Supp. 2d 1094 (D. Kan. 2000), *Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001); and *Miami Tribe of Okla. v. United States*, 316 F. Supp. 2d 1035 (D. Kan. 2004).

[3]*Midwest Inv. Properties, Inc. v. DeRome*, No. 86-2497-O (D. Kan. 1986).

[4]*Downs v. Acting Muskogee Area Dir.*, 29 IBIA 94, 1996 WL 164987 (1996).

and she did not have a special relationship or circumstance with Miami Tribe warranting the gift conveyance.

In 2001, Smith similarly sought authorization from the Secretary of the Interior to convey by gift one-third of his interest in Miami Reserve to Miami Tribe.  He completed an Application for Gift Deed of Indian Land dated August 17, 2001 to obtain the necessary approval from the Secretary of the Interior for the gift conveyance.[5]  His stated reason for the proposed conveyance was that he wished to do something for the benefit of Miami Tribe and its members.

On January 10, 2002, the BIA, through Acting Director Dan Deerinwater, denied Smith's application for gift conveyance.   In declining to approve the transfer, the BIA accepted that a special relationship exists between Smith, as a member of Miami Tribe, and Miami Tribe.  Notwithstanding its recognition of the existence of a special relationship between Smith and Miami Tribe, the BIA found that no special circumstances justified a gift of Smith's interest to Miami Tribe.  The BIA determined that Smith's conveyance of a portion of his interest would add to, rather than eliminate, the further fractionation of individually-owned Indian lands and would not serve to consolidate fractional interests and ownership into usable parcels.  It further found that the proposed conveyance would not enhance tribal sovereignty or promote tribal self-sufficiency and self-determination any better than what could be accomplished through Miami Tribe's approved business development lease of Miami Reserve.  The BIA concluded that the proposed conveyance would not be in the best long-term interest of Smith or the other allotment owners

---

[5]Admin. R. (doc. 3) at 121.

and that the conveyance would conflict with the Federal government's policy on fractionated interests as set out by the Indian Land Consolidation Act Amendments of 2000.[6]

In February 2002, Smith appealed the BIA's initial decision to the Interior Board of Indian Appeals ("Appeals Board").  The Appeals Board subsequently granted Miami Tribe's motion to intervene. Following the submission and consideration of briefs on the matter, the Appeals Board affirmed the BIA's decision in *Smith v. Acting Eastern Oklahoma Regional Director.*[7]

On May 5, 2002, Miami Tribe filed its Complaint in which it asserted three Counts.  Count I of the Complaint seeks judicial review of the BIA's decision under the Administrative Procedures Act ("APA").[8] Count II alleges that Defendants breached their fiduciary and trust duties to Miami Tribe.  Count III alleges that Defendants have violated substantive and procedural due process and property rights of Miami Tribe.

Early in this case, the parties agreed to bifurcate Count I (APA, Injunctive Relief, and Violation of 25 U.S.C. § 2216) of Plaintiff's Complaint from Counts II (Breaches of Trust) and III (Constitutional Violations) and to proceed first with Count I.[9]  The Court's Scheduling Order provides that the scheduling issues with regard to Counts II and III will be taken up after the Court rules on the parties' briefs regarding the review of the administrative agency decision.

---

[6]Pub. L. No. 106-462, 114 Stat. 1991 (codified as amended at 25 U.S.C. §§ 2201-2219) (2000).

[7]38 IBIA 182, 2002 WL 32345894 (Oct. 31, 2002).

[8]5 U.S.C. § 702.

[9]*See* Scheduling Order (doc. 6).

The parties' original APA briefing submitted to the Court focused primarily on whether the BIA correctly applied 25 C.F.R. §§ 152.23 and 152.25(d).  Neither party focused on whether the 2000 amendments to the Indian Land Consolidation Act ("ILCA"), particularly 25 U.S.C. § 2216(b), applied to Smith's application for approval to transfer a percentage of his interest in Miami Reserve to Miami Tribe. The Court thereafter requested additional briefing from the parties to address this issue.   The parties submitted the requested briefing and the Court is now ready to rule.

## II.    Standard of Review

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."[10]  But the "ultimate standard of review is a narrow one."[11]

The APA authorizes the reviewing court to "compel agency action unlawfully withheld" and to "hold unlawful and set aside agency actions, findings, and conclusions" that the court finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[12]  Under an APA review, "an agency's action must be upheld, if at all, on the basis articulated by the agency itself."[13]  The Tenth Circuit has identified the essential function of agency review as an analysis of "(1) whether the agency acted within

---

[10]5 U.S.C. § 702; *see Catron County Bd. of Comm'rs v. Fish & Wildlife Serv.*, 75 F.3d 1429, 1434 (10th Cir. 1996).

[11]*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), overruled on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977)).

[12]5 U.S.C. §§ 706(1)-(2)(A); *Citizens*, 401 U.S. at 415-16; *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1573-75 (10th Cir. 1994).

[13]*Olenhouse*, 42 F.3d at 1575 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)).

the scope of its authority, (2) whether the agency complied with prescribed procedures, and (3) whether the action is otherwise arbitrary, capricious or an abuse of discretion."[14]

In order to determine whether the agency acted arbitrarily, capriciously, abused its discretion, or acted not in accordance with the law, the reviewing court must determine whether the agency's explanation for its decision is based on a consideration of the relevant facts and whether a clear error of judgment occurred.[15]   The inquiry into the agency's decision should be a substantial inquiry that is searching and careful; however, the reviewing court has no power to substitute its own judgment for that of the administrative agency.[16]

An agency decision should be set aside if the court finds that:

the agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.[17]

## III.   The BIA's Decision

In making its decision, the BIA applied the following two regulations dealing with the sale, exchange, or conveyance of Indian trust or restricted lands:  25 C.F.R. §§ 152.23 and 152.25(d).  The

---

[14]*Olenhouse*, 42 F.3d at 1574.

[15]*Citizens*, 401 U.S. at 416.

[16]*Id.*

[17]*Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43.

regulation setting forth the procedure for applications for a sale, exchange, or gift of restricted Indian land interests is contained in 25 C.F.R. § 152.23, which provides:

> Applications for the sale, exchange or gift of trust or restricted land shall be filed in the form approved by the Secretary with the agency having immediate jurisdiction over the land. Applications may be approved if, after careful examination of the circumstances in each case, the transaction appears to be clearly justified in the light of the long-range best interest of the owner or owners or as under conditions set out in § 152.25(d).[18]

25 C.F.R. § 152.25(d) addresses conveyances of trust or restricted land for less than the appraised fair market value or no consideration. It provides:

> With the approval of the Secretary, Indian owners may convey trust or restricted land, for less than the appraised fair market value or for no consideration when the prospective grantee is the owner's spouse, brother, sister, lineal ancestor of Indian blood or lineal descendant, or when some other special relationship exists between the grantor and grantee or special circumstances exist that in the opinion of the Secretary warrant the approval of the conveyance.[19]

In applying these regulations, the BIA provided two primary reasons for denying Smith's application to transfer one-third of his interest in Miami Reserve to Miami Tribe. The first reason articulated by the BIA was that Smith's proposed gift conveyance was contrary to its position that Indian owners receive at least fair market value when disposing of their property.[20] The BIA's second stated reason for denying the application was based upon the BIA's finding that conveying only one-third of

_____

[18]25 C.F.R. § 152.23.

[19]25 C.F.R. § 152.25(d).

[20]Admin. R. at 179.

Smith's interest would add to further fractionation of individually-owned Indian lands.[21]  The Court will discuss in turn each reason articulated by the BIA.

### A.      Gift Nature of Smith's Proposed Conveyance

The first policy consideration articulated by the BIA in support of its decision to deny Smith's application concerned the fact that Smith seeks to give, rather than sell, a portion of his interest to Miami Tribe.  In its determination letter, the BIA states its general position regarding proposed land transfers for less than fair market value:  "[T]he Bureau's position remains unchanged that Indian landowners receive at least fair market value for allotted land purchases unless special circumstances warrant otherwise."[22]  Although the BIA's decision recognized that a "special relationship" exists between Smith and Miami Tribe because Smith is a member of Miami Tribe, the BIA ultimately concluded that neither Smith nor Miami Tribe presented any "special circumstances that would justify a gift of a portion of [Smith's] undivided interest to the Tribe."[23]

Miami Tribe argues that the BIA's uncompromising position on gift conveyances violates the language of its own regulation, which expressly authorizes no-consideration transfers when a "special relationship" exists between the grantor and grantee.  The Court agrees with Miami Tribe that the BIA's stated policy that Indian landowners receive at least fair market value for allotted land purchases unless "special circumstances" warrant otherwise is not in accordance with 25 C.F.R. § 152.25(d).  The

_____

[21]Admin. R. at 179-180.

[22]Admin. R. at 179.

[23]Admin. R. at 179.

regulation states that Indian owners may convey trust or restricted land, for less than the appraised fair market value or for no consideration, when "the prospective grantee is the owner's spouse, brother, sister, lineal ancestor of Indian blood or lineal descendant, *or* when some other special relationship exists between the grantor and grantee *or* special circumstances exist that in the opinion of the Secretary warrant the approval of the conveyance."[24]

In this case, the BIA expressly found that a special relationship exists between grantor Smith and grantee Miami Tribe as Smith is a member of Miami Tribe. Notwithstanding this determination, the BIA required Smith to show "special circumstances" justifying the gift transfer. The regulation, however, uses the disjunctive "or." Thus, under the plain language of the regulation, Smith need only meet one of the three listed conditions. The BIA found that a special relationship exists between Smith and Miami Tribe. That finding, by itself, is sufficient under 25 C.F.R. § 152.25(d) to allow Smith to give his interest to Miami Tribe.

Even more compelling to the Court is the apparent inconsistency between the BIA's stated policy regarding transfers for less than fair market value and the language within 25 U.S.C. § 2216(b), added by the 2000 amendments to the Indian Land Consolidation Act.[25] Section 2216(b) specifically addresses

---

[24]25 C.F.R. § 152.25(d) (emphasis added).

[25]In their supplemental briefing, Defendants argue that the Court may not properly consider 25 U.S.C. § 2216(b)(1) because an analysis of this subsection of the statute is not found in the administrative record and it was not raised as an issue by the parties in the initial briefs filed with the Court. While the parties did not specifically cite 25 U.S.C. § 2216(b)(1) in their initial briefs, Miami Tribe generally referenced 25 U.S.C. §§ 2201 and 2216, along with several references to the Indian Land Consolidation Act, codified at 25 U.S.C. §§ 2201-2219, in its Complaint (doc. 1) and its Brief (doc. 8). The Court therefore finds that Miami Tribe's references are sufficient so that the Court may consider 25 U.S.C. § 2216(b)(1) in its review of the BIA's decision.

sales, exchanges and gift deeds (1) between Indians, and (2) *between Indians and Indian tribes*.  It provides:

> Notwithstanding any other provision of law and only after the Indian selling, exchanging, or conveying by gift deed *for no or nominal consideration* an interest in land, has been provided with an estimate of the value of the interest of the Indian pursuant to this section--
>
> (i) the sale or exchange or conveyance of an interest in trust or restricted land may be made for an amount that is less than the fair market value of that interest; and
>
> (ii) the approval of a transaction that is in compliance with this section shall not constitute a breach of trust by the Secretary.[26]

In its decision, the BIA states that its "position remains unchanged that Indian landowners receive at least fair market value when disposing of their property, and that Indian tribes should pay fair market value for allotted land purchases unless special circumstances warrant otherwise."[27]  A close reading of 25 U.S.C. § 2216(b) does not support this presumption when the transaction is between Indians or between Indians and Indian tribes.  In seemingly direct contrast, the statute allows the sale, exchange, or conveyance of an interest for less than fair market value, as long as (1) the sale, exchange or conveyance is between Indians or is between Indians and Indian tribes, and (2) the owner has been provided with, or waives, an estimate of the value of the interest sought to be conveyed.  The Court therefore finds that the BIA's first articulated reason for denying the transfer, i.e., that it is a gift conveyance, is not in accordance with 25 U.S.C. § 2216(b).

### B.    Impact on Fractionation

---

[26]25 U.S.C. § 2216(b)(1) (emphasis added).

[27]Admin. R. at 179.

The second reason stated by the BIA in its January 11, 2002 decision was that Smith's proposed transfer would add to further fractionation of individually-owned Indian lands.  The BIA noted that Miami Tribe does not already hold any interest in the property other than a business development lease approved in 1999.[28]  The BIA found that the proposed conveyance of only one- third of Smith's undivided interest in the property would "add to, rather than eliminate, the further fractionation of individually-owned Indian lands," and would not serve to consolidate the fractional interests and the ownership of those interests into usable parcels.[29]  It further found that the proposed conveyance to Miami Tribe would not enhance tribal sovereignty or promote tribal self-sufficiency and self-determination over what could be accomplished through the business development lease with Miami Tribe.[30]  The BIA also found that the proposed transfer would not reverse the effects of the allotment policy on Miami Tribe due to the off-reservation, out-of-state location of the tract.[31]  The BIA further expressed concerns regarding "tract management, competing interests between [Miami] Tribe and the individual land owners, and the potential for land use conflicts."[32]  The BIA reasoned that "highly fractionated ownership interests greatly complicate the Bureau's land management efforts and the successful discharge of the Federal government's trust responsibilities."[33]

---

[28]Admin. R. at 179.

[29]Admin. R. at 179-180.

[30]Admin. R. at 180.

[31]Admin. R. at 180.

[32]Admin. R. at 179.

[33]Admin. R. at 179.

Miami Tribe contends that the BIA's erroneous finding that the proposed transfer would cause further fractionation is based on a short-sighted view of the transfer and that the BIA erroneously failed to consider the long-range impact on further fractionation.  Miami Tribe argues that, in the long term, conveyance of a portion of Smith's interest in the land to the Tribe would reduce further fractionation of Miami Reserve rather than increase it because Miami Tribe will likely exist into perpetuity and, because the Tribe has no descendants or heirs, further fractionation would be eliminated.

The applicable regulation governing exchanges of tribal land, 25 C.F.R. § 152.23, indicates that the BIA's examination should be based on whether the transaction appears to be clearly justified "in the light of the long-range best interest of the owner or owners."  The BIA found that the conveyance of only one-third of Smith's interest would increase the fractionation of individually-owned Indian lands because Smith's already fractionated interest would be further fractionated between Smith and Miami Tribe.  The BIA's finding, however, is based upon the immediate, short-term effect of the proposed transfer. Conspicuously absent from the BIA's decision is any discussion of whether it considered the longer-range impact on further fractionation by Smith's proposed transfer.  Miami Tribe has clearly indicated its intention to consolidate the land interests in Miami Reserve in its Land Consolidation Plan filed with and approved by the BIA.  In its brief, Miami Tribe continues to state its intent to consolidate ownership interests in Miami Reserve.

Perhaps the BIA's reliance upon the short-term impact on further fractionation of individually-owned Indian lands would pass muster if Smith's application sought to transfer a portion of his interest to an unrelated Indian tribe with no connection or ties to the property.  That is not the case, however, as Smith

-12-

seeks to give a portion of his interest in Miami Reserve to the tribe of which he is a member.  Moreover, Miami Reserve is part of the former reservation lands of Miami Tribe.  At least one other Miami Reserve landowner has attempted to transfer a portion of her interest in Miami Reserve to Miami Tribe.  Miami Tribe has provided the BIA with notice of its intent to include Miami Reserve in its land consolidation plan.  As noted by the Tenth Circuit in 2001, Miami Tribe has adopted Miami Reserve's twenty-plus owners into its tribe, those owners have consented to tribal jurisdiction pursuant to a lease with the Tribe, and the Tribe has developed the tract.[34]  Miami Tribe claims that it regularly patrols Miami Reserve, takes care of any burning needed, passes laws governing the use of the lands, leases the lands, issues permits for individuals to use the lands, and holds religious ceremonies.  Miami Tribe has indicated that it has no incentive or plan to ever transfer any interest it may obtain in Miami Reserve.

As stated by the Supreme Court, one of the reasons for setting aside an agency decision is "if the court finds that the agency . . . entirely failed to consider an important aspect of the problem."[35]  In this case, the Court, after much reflection, determines that the BIA's failure to consider Smith's application based upon the long-term impact on fractionation justifies setting aside the BIA's decision.  It is clear to the Court that Miami Tribe has extensive connections and ties to Miami Reserve.  The BIA's exclusive focus on the short-term impact of Smith's proposed transfer on the further fractionation of individually-

---

[34]*Kansas v. United States,* 249 F.3d 1213, 1230 (10th Cir. 2001).  *See also State ex rel Graves*, 86 F. Supp. 2d at 1096.

[35]*See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 ("Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise").

owned Indian lands, in light of Miami Tribe's extensive connection and ties to Miami Reserve, convinces the Court that the BIA failed to consider an important aspect of a factor upon which it relied in making its decision.  The Court therefore concludes that the BIA's second articulated reason for denying Smith's application, which is based upon the determination that it would increase further fractionation of individually-owned Indian lands in the short-term without considering the long-term impact, is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### C.     Indian Land Consolidation Act Amendments of 2000

The Court also finds that the BIA's decision as a whole is contrary to the stated policies of Congress under the Indian Land Consolidation Act ("ILCA").[36]  Specifically, the 2000 Amendments to the ILCA appear to encourage the type of transfer at issue in this case.

Congress enacted the ILCA[37] in 1983 and thereafter amended the ILCA in 1984[38] and in 2000.[39] The 2000 amendments modified several existing sections of the ILCA, added the declaration of policy, and

---

[36]Indian Land Consolidation Act of 1983, Pub. L. No. 97-459, §§ 201-211, 96 Stat. 2519 (1983).

[37]*Id.*

[38]Indian Land Consolidation Act Amendments of 1984, Pub. L. No. 98-608, 98 Stat. 3171 (1984) (amending 25 U.S.C. §§ 2203-2206, and adding §2211).

[39]Indian Land Consolidation Act Amendments of 2000, Pub. L. No. 106-462, 114 Stat. 1991 (2000).

added sections 214 - 220.[40]  The Declaration of Policy added by Public Law 106-462[41] in November 2000 states:

> It is the policy of the United States--
>
> (1) to prevent the further fractionation of trust allotments made to Indians;
>
> (2) to consolidate fractional interests and ownership of those interests into usable parcels;
>
> (3) to consolidate fractional interests in a manner that enhances tribal sovereignty;
>
> (4) to promote tribal self-sufficiency and self-determination; and
>
> (5) to reverse the effects of the allotment policy on Indian tribes.

The 2000 amendments to the ILCA also added a statute specifically addressing trust and restricted land transactions.  Subsection (a) of 25 U.S.C. § 2216 sets forth the federal government's policy on Indian land consolidation:

> It is the policy of the United States to encourage and assist the consolidation of land ownership through transactions--
>
> (1) involving individual Indians;
>
> (2) between Indians and the tribal government that exercises jurisdiction over the land; or
>
> (3) between individuals who own an interest in trust and restricted land who wish to convey that interest to an Indian or the tribal government that exercises jurisdiction over the parcel of land involved;
>
> in a manner consistent with the policy of maintaining the trust status of allotted lands. Nothing in this section shall be construed to apply to or to authorize the sale of trust or restricted lands to a person who is not an Indian.[42]

------------------------

[40]Codified at 25 U.S.C. §§ 2213-2219.

[41]See notes following 25 U.S.C. § 2201.

[42]25 U.S.C. § 2216(a) (emphasis added).

Defendants argue in their supplemental briefing that Smith's application to transfer one-third of his undivided interest in Miami Reserve is not governed by 25 U.S.C. § 2216(a), and that this statute should have no effect on the BIA's application of 25 C.F.R. §§ 152.23 and 152.25(d), because Miami Tribe does not qualify as "the tribal government that exercises jurisdiction over the land."[43]

### 1.    Whether 25 U.S.C. § 2216 applies to Smith's application

The Indian Land Consolidation Act does not define "tribal government that exercises jurisdiction over the land," nor does it provide any guidance as to what Congress specifically intended by its reference to "tribal governments that exercise jurisdiction over the parcel of land involved," as used in 25 U.S.C. § 2216(a).  Defendants contend that the Tenth Circuit has resolved the general issue of whether Miami Tribe has jurisdiction over Miami Reserve under the Indian Gaming Regulatory Act in *Kansas v. United States.*[44]  Defendants urge the Court to apply the same jurisdictional analysis by analogy to Miami Tribe's jurisdiction under the ILCA.

Miami Reserve has been the subject of extensive litigation before this Court and the Tenth Circuit Court of Appeals.[45]  In *Miami Tribe I* through *Miami Tribe IV*, the courts analyzed Miami Tribe's jurisdiction over Miami Reserve in the context of the Indian Gaming Regulatory Act ("IGRA").  In *Miami*

---

[43]25 U.S.C. § 2216(a)(2).

[44]249 F.3d 1213 (10th Cir. 2001).

[45]*See Miami Tribe of Okla. v. United States*, 927 F. Supp. 1419 (D. Kan. 1996) ("Miami Tribe I"); *Miami Tribe of Okla. v. United States*, 5 F. Supp. 2d 1213 (D. Kan. 1998) ("Miami Tribe II"); *State ex rel. Graves v. United States*, 86 F. Supp. 2d 1094 (D. Kan. 2000) ("Miami Tribe III"); *Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001) ("Miami Tribe IV").

*Tribe IV*,[46] the Tenth Circuit summarized *Miami Tribe I* Court's findings and conclusions in regard to Miami Tribe's claim of jurisdiction over the Miami Reserve as follows:

> In 1873, the Tribe agreed to sell its unallotted lands in Kansas; Congress legislated the purchases of the lands in 1882. In 1884, the Tribe sought reimbursement for the land allotted to, among others, Maria Christiana DeRome. In essence, the Tribe claimed that the Maria Christiana allotment should be treated as unallotted land and sold to the United States. The Court of Claims agreed and compensated the Tribe for the land in 1891. In 1960, the Tribe sought interest on the payments made in 1891. The Court of Claims concluded that ... 1858 legislation had unlawfully taken funds and land designated for the Tribe [including Reserve No. 35], and awarded interest on the 1891 payments. The court in [Miami Tribe I] concluded from this series of events that the Tribe has unmistakably relinquished its jurisdiction over the Reserve. Moreover, in 1873, Congress expressly abrogated the Tribe's jurisdiction [over its former lands in Kansas], which was effective no later than 1924 when any members of the Tribe remaining in Kansas--and their heirs--became naturalized citizens.[47]

The *Miami Tribe VI* Court held that Miami Tribe's activities to claim tribal jurisdiction over the tract, namely (1) the Tribe's adoption of the tract's twenty-plus owners into the Tribe, (2) those owners' consent to tribal jurisdiction pursuant to a lease with the Tribe, and (3) the Tribe's recent development of the tract, did not alter the Court's conclusion that Congress abrogated Miami Tribe's jurisdiction over the tract long ago, and has done nothing since to change the status of the tract.[48]   The court restated the proposition of law that "an Indian tribe's jurisdiction derives from the will of Congress, not from the consent of fee owners pursuant to a lease under which the lessee acts."[49]

---

[46]249 F. 3d 1213 (10th Cir. 2001).

[47]*Id*, at at 1230.  *See also Miami Tribe III*, 86 F. Supp. 2d at 1095.

[48]*Miami Tribe IV*, 249 F.3d at 1230-31.

[49]*Id.* at 1231.

Defendants argue that the Court's jurisdictional analysis in *Miami Tribe IV* can be extended to this case. They assert that the judicial determination that Congress abrogated the Miami Tribe's jurisdiction over Miami Reserve is a crucial factor in determining whether 25 U.S.C. § 2216 applies to Smith's transaction because an Indian tribe's jurisdiction is derived from the will of Congress, not by the acts of the tribe. Defendants argue that because Congress abrogated the Miami Tribe's jurisdiction over Miami Reserve and has done nothing since to restore jurisdiction to the Tribe, Miami Tribe does not presently exercise jurisdiction over any portion of Miami Reserve.

While the Court agrees that the Tenth Circuit has settled the issue of whether Miami Tribe exercises jurisdiction over Miami Reserve under the Indian Gaming Regulatory Act, the Court is not convinced that the Tenth Circuit's decision answers the question whether Miami Tribe would qualify as a "tribal government that exercises jurisdiction over the land" under the ILCA. The Court does not interpret 25 U.S.C. § 2216(a)'s use of the phrase "tribal government that exercises jurisdiction over the land" to require an actual Congressional grant of jurisdiction over Miami Reserve to Miami Tribe. Miami Tribe's undisputed, claimed current actions and activities with regard to Miami Reserve reflect those of a tribe that exercises jurisdiction over Miami Reserve. It patrols and protects the lands, takes care of any burning needed, passes laws governing use of the lands, leases the lands, issues permits for individuals to use the lands, and uses the land for religious ceremonies. These actions are sufficient to establish that Miami Tribe exercises jurisdiction over Miami Reserve for purposes of applying the land consolidation policies contained in 25 U.S.C. § 2216(a).

Moreover, Miami Tribe's Indian Land Consolidation Plan, approved by the BIA, expressly identifies Miami Reserve as land that the Miami Tribe intends to consolidate under the ILCA.[50] By its approval of Miami Tribe's Indian Land Consolidation Plan, the BIA has implicitly recognized Miami Tribe as exercising jurisdiction over Miami Reserve. In light of the BIA's implicit recognition of Miami Tribe as a tribal government exercising jurisdiction over Miami Reserve under the ILCA, it is inconsistent for Defendants to now claim that Miami Tribe does not qualify as a tribal government exercising jurisdiction over Miami Tribe under 25 U.S.C. § 2216(a).

The Court also finds it inconsistent for Defendants to argue that the Court should not apply the federal government's land consolidation policy contained in 25 U.S.C. § 2216(a). The BIA's decision expressly cited the "Federal government's policy on fractionated interest as set out by the Indian Land Consolidation Act Amendments of 2000"[51] in support of its decision denying Smith's application. Now the BIA argues that the federal government's land consolidation policy, also contained in the ILCA Amendments of 2000, should not apply to Smith's application. These seemingly contradictory positions give the impression that the BIA uses ILCA policies when they support its action but declines to give ILCA policies the same weight when the policies appear contrary to its decision.

The Court holds that for purposes of the policy sections set forth in the ILCA, Miami Tribe qualifies as a "tribal government that exercises jurisdiction over the land." As such, the Indian land consolidation

---

[50]Admin. R. at 51.

[51]Admin. R. at 179.

policies codified in 25 U.S.C. § 2216(a) should apply to Smith's application to transfer one-third of his undivided interest in Miami Reserve to Miami Tribe.

## IV.    Conclusion

The BIA articulated two policy reasons in support of its decision to deny Smith's application to transfer one-third of his undivided interest in Miami Reserve to Miami Tribe.  The BIA's first articulated justification, that Indian landowners receive at least fair market value for their interest unless special circumstances warrant otherwise, is inconsistent with 25 C.F.R. § 152.25(d), as well as 25 U.S.C. 2216(b).  The BIA's second reason, reduction of further fractionation of Miami Reserve, failed to consider the proposed transfer's long-range impact on further fractionation of Miami Reserve.  Because the BIA's first reason for its decision was not in accordance with the law and its second reason was based upon its failing to consider an important aspect of a factor upon which it relied in making its decision, the BIA's decision denying Smith's application to convey a portion of his undivided interest in Miami Reserve is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.   The Court therefore reverses the BIA's January 11, 2002 decision and directs the BIA to approve Smith's application to convey one-third of his interest in Miami Reserve to Miami Tribe.

**IT IS THEREFORE ORDERED** that the January 11, 2002 decision of the BIA denying Smith's application for approval to gift convey one-third of his interest in Miami Reserve to Miami Tribe is hereby reversed and the BIA is instructed to forthwith approve Smith's application.

**IT IS FURTHER ORDERED** that a telephone Status Conference is scheduled **July 19, 2005 at 10:00 a.m.** to discuss scheduling issues with regard to Counts II and III of Plaintiff's Complaint.

-20-

**IT IS SO ORDERED**.

Dated at Kansas City, Kansas on this 22nd day of June, 2005.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:    All counsel