IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MIAMI TRIBE OF OKLAHOMA,

                Plaintiff,                        Civil Action

v.                                        Case No. 03-2220-DJW

UNITED STATES OF AMERICA;
DIRK KEMPTHORNE, SECRETARY,
UNITED STATES DEPARTMENT OF THE
INTERIOR; and GEORGE SKIBINE,
ASSISTANT SECRETARY OF INTERIOR
BUREAU OF INDIAN AFFAIRS,

                Defendants.


## <u>MEMORANDUM AND ORDER</u>

        This matter comes before the Court on Plaintiff Miami Tribe's APA Brief Seeking Equitable

Relief to Remedy Wrongful Administrative Actions (doc. 130). Miami Tribe requests that the Court

set aside the October 10, 2008 decision of the Interior Board of Indian Appeals ("IBIA") as arbitrary

and capricious under the Administrative Procedures Act. Miami Tribe further requests that the

Court grant judgment on its breach of trust claim in its favor and enter a permanent injunction

against Defendants. The parties have consented to the exercise of jurisdiction by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c). As set forth below, the Court affirms the IBIA's

October 10, 2008 Order Affirming Decision in Part and Vacating in Part, denies Miami Tribe's

requests for equitable relief, and dismisses the breach of trust claim set forth in Count II of Miami

Tribe's Second Amended Complaint.

# I.     Procedural Posture of Matter Before the Court

James E. Smith ("Smith"), a member of the Miami Tribe of Oklahoma ("Miami Tribe"), holds a 3/38 restricted undivided interest in the Maria Christiana allotment, Miami No. 35 ("Miami Reserve"), located in Miami County, Kansas.  In 2001, Smith submitted his application to the Bureau of Indian Affairs ("BIA") for approval to gift transfer one-third of his 3/38 undivided interest in Miami Reserve to Miami Tribe (hereinafter "application for gift conveyance").  The BIA denied Smith's application for gift conveyance on January 10, 2002.

On May 5, 2003, Miami Tribe commenced the present action in this Court seeking judicial review of the BIA's denial of Smith's application under the Administrative Procedures Act ("APA").[1]  Miami Tribe also asserted claims that Defendants breached their fiduciary and trust duties to Miami Tribe, and that Defendants had violated substantive and procedural due process and property rights of Miami Tribe.  Early in the case, the parties agreed to bifurcate Miami Tribe's request for judicial review under the APA from its claims based upon breach of trust and constitutional violations.

On June 22, 2005, the Court issued its Memorandum and Order reversing the BIA's January 11, 2002 decision that denied Smith's application for gift conveyance, and instructing the BIA to forthwith approve Smith's application.[2]

On July 7, 2005, Defendants filed their Motion for Reconsideration of the Court's June 22, 2005 Memorandum and Order, requesting that the Court reconsider its decision and affirm the BIA's denial of Smith's application.  Defendants alternatively requested the Court remand the matter to

---

[1] 5 U.S.C. § 701 *et seq.*

[2] *Miami Tribe of Okla. v. United States*, 374 F. Supp. 2d 934 (D. Kan. 2005).

2

the BIA rather than reversing the BIA's decision. On November 23, 2005, the Court granted

Defendants' Motion for Reconsideration as to the portion of the Court's Memorandum and Order

that directed the BIA to forthwith approve Smith's application for gift conveyance.[3] The Court

ordered that the case be remanded to the BIA for further proceedings consistent with the Court's

June 22, 2005 Memorandum and Order. Specifically, the Court remanded the matter for the BIA

to consider the proposed transfer's long-term impact on further fractionation of Miami Reserve.

On remand, the BIA approved Smith's application to give one-third of his 3/38 interest in

Miami Reserve to Miami Tribe. The BIA issued its decision dated October 23, 2007, which notified

Smith and Miami Tribe that Smith's application for gift conveyance was approved by the BIA. The

letter, however, further advised that with respect to Smith's request to transfer his interest to Miami

Tribe "in trust," Miami Tribe would need to submit an application for a trust acquisition under 25

C.F.R. 151. The BIA's October 23, 2007 letter stated, in pertinent part:

> Your letter dated April 23, 2007, provided clarification that you wish to transfer 1/3
> of your undivided interest to the Tribe with the interest to the Tribe to remain in
> "trust status." Therefore, the proposed gift conveyance will be processed as a two-
> part transaction consisting of a disposal by you and an acquisition by the Tribe in
> trust status. The disposal portion is considered in accordance with 25 CFR 152.17
> and the acquisition portion will be processed in accordance with 25 CFR 151 upon
> the receipt of an application for a trust acquisition from the Tribe. In this regard, by
> copy of this letter, the Tribe is advised of the Bureau's findings that consideration
> will be given to the acquisition upon receipt of the application from the Tribe.
>
> The Deed to Restricted Indian Land you executed on June 20, 2007, if approved,
> would have conveyed the interest in fee status to the Tribe. Therefore a deed
> transferring a 1/38 interest in [Miami Reserve] to the United States of America in
> Trust for the Miami Tribe of Oklahoma is enclosed for your review and execution.

---

[3]*See* Nov. 23, 2005 Mem. & Order (doc. 37).

The executed deed is to be returned to this office and will be included in the Tribe's fee-to-trust application.[4]

Miami Tribe appealed the BIA's October 23, 2007 decision on remand with the Interior Board of Indian Appeals ("IBIA"). On October 10, 2008, the IBIA issued its Order Affirming Decision in Part and Vacating in Part. The IBIA affirmed the BIA Regional Director's determination that Smith holds his interest in Miami Reserve in restricted fee title and that interest is not being held in trust by the United States.[5] It vacated the decision "to the extent that it suggests that the interest to be conveyed to the Tribe would be an unrestricted fee simple interest."[6] The IBIA's decision further indicated that "[b]ecause the Tribe seeks title in the name of the United States in trust for the Tribe, and in the absence of any indication by the Tribe that it will accept Smith's gift if Smith holds restricted fee title, the Regional Director need not proceed further with the transaction at this time."[7]

On October 30, 2008, Miami Tribe filed its Second Amended Complaint (doc. 126) asserting two counts. In Count I, Miami Tribe seeks APA review of the BIA's refusal to approve Smith's request to transfer one-third of his interest in Miami Reserve "in trust" to Miami Tribe. In Count II, Miami Tribe asserts a common law breach of trust claim against Defendants based upon their alleged breaches of their fiduciary and trust duties. These breaches include the BIA's refusal to approve Smith's application, refusal to approve the transfer of Smith's interest in trust for the benefit

---

[4]BIA's Oct. 23, 2007 decision, Ex. A to Miami Tribe's APA Br. (doc. 130-11).

[5]IBIA's Oct. 10, 2008 Order Affirming Decision in Part and Vacating in Part, Ex. K to Second Amended Complaint (doc. 126-11).

[6]*Id.* at 3.

[7]*Id.*

4

of Miami Tribe, refusal to timely consider and act on Smith's appeal of the denial of his request for transfer, failure to protect and recognize Miami Tribe's jurisdiction over Miami Reserve, and failure to maintain and hold Miami Reserve in trust for the benefit of its Indian owners. Miami Tribe seeks equitable relief under the APA for these alleged breaches, including an order compelling Defendants to: (1) approve Smith's transfer in trust to Miami Tribe, (2) recognize and protect Miami Tribe's jurisdiction over Miami Reserve, (3) hold Miami Reserve in trust for the benefit of Miami Tribe and the other beneficial owners, and (4) process all future transfers of interests in Indian lands from a member to his or her Indian tribe within 180 days of the submission of the application for approval.

Miami Tribe filed the instant APA Brief Seeking Equitable Relief to Remedy Wrongful Administrative Actions (doc. 130) on December 15, 2008. Miami Tribe later filed supplements to the administrative record on February 23, 2009 (doc. 140) and May 21, 2009 (doc. 146). Defendants filed their Response to Miami Tribe's Second Supplement to the Administrative Record (doc. 147) on June 11, 2009.

In its APA brief, Miami Tribe requests that the Court set aside the IBIA's October 10, 2008 decision as arbitrary and capricious under the APA. It further requests that the Court grant equitable relief on its breach of trust claim and enter an order mandating that Defendants recognize the trust status of Miami Reserve, recognize Miami Tribe's jurisdiction over Miami Reserve, and process all future application for transfers of interest in Miami Reserve within 180 days.

The Court will first review the IBIA's October 10, 2008 decision, and will then address Miami Tribe's requests for specific equitable relief under the APA. The Court will then address Defendants' request for dismissal of the breach of trust claim set forth in Count II of Miami Tribe's Second Amended Complaint.

**II.     Review of IBIA's October 10, 2008 Decision**

Miami Tribe seeks judicial review of the IBIA's October 10, 2008 decision affirming the BIA's post-remand determination that Smith holds his interest in Miami Reserve in restricted fee title and the interest is not being held in trust by the United States.  It further seeks review of the agency's refusal to approve Smith's proposed gift transfer "in trust" to Miami Tribe.  It contends that pursuant to the 1989 order partitioning Miami Reserve, entered in *Midwest Investment Properties, Inc. v. DeRome*,[8] the last remaining 35 acres of Miami Reserve was conveyed "to the United States Government by and through the Bureau of Indian Affairs . . . in trust for the benefit of the Indian owners."[9]  Miami Tribe argues that absent any indication that Miami Reserve has been transferred out of trust by the United States, Smith's present interest in Miami Reserve continues to be held in trust.

According to Miami Tribe, if Smith's present interest is held in trust by the terms of the 1989 partition order, then the IBIA acted arbitrarily and capriciously when it refused to approve the gift transfer of Smith's interest "in trust" under 25 U.S.C. § 2216(d).  That statute provides that "the sale, exchange, or conveyance by gift deed for no or nominal consideration of an interest in trust or restricted land . . . shall not affect the status of the land as trust or restricted land."  Miami Tribe asks the Court to remand the matter to the BIA for timely approval of Smith's transfer in trust, consistent with the express language of the 1989 partition order, the representations of Defendants with respect to the partition order, and 25 U.S.C. § 2216(d).

---

[8]Civ. A. No. 86-2497-O (D. Kan. May 3, 1989).

[9]*Midwest Inv. Properties, Inc. v. DeRome*, No. 86-2497-0, Order Confirming Report of Commissioners in Partition (D. Kan. May 3, 1989), Ex. B to Miami Tribe's APA Br. (doc. 130-3).

Defendants argue that Smith's property interest in Miami Reserve is held only in restricted fee status and is not trust property. They claim the record is replete with evidence demonstrating that Miami Reserve was originally issued in restricted fee and remained in restricted fee thereafter. Defendants contend that Congress understood Miami Reserve to be in restricted fee when it contemplated Public Law 97-344, by specifically mandating that any conveyance to Indian grantees pursuant to partition would have to be made in restricted fee. And subsequent court decisions involving Miami Reserve have also expressed the understanding that the property continues to be held in restricted fee status. Defendants argue that the 1989 partition order language purportedly conveying Miami Reserve to the United States Government in trust was only intended to allow the Indian-owned portion of the property to be transferred out of joint ownership with the non-Indian owners. They point out that the 1989 partition order states that the Indian owners are "to be vested with restricted fee title in percentages determined by the Bureau of Indian Affairs."[10] Defendants explain that the transfer of Miami Reserve to the United States Government in trust was for the purpose of allowing a brief period of time for the BIA to calculate the percentage ownership for each Indian owner. After the BIA completed its calculations of the ownership percentages, then ownership would vest in the proper percentage to each Indian owner in restricted fee status, as provided by the partition order language. Defendants argue this is supported by Public Law 97-344(3), which authorized the partitioning of Miami Reserve and provides that "[a]ny conveyance ordered by the court in such [partition] proceedings will be made in unrestricted fee simple to non-Indian grantees and in a restricted fee to Indian grantees." Defendants ask the Court to affirm

---

[10]*Midwest Inv. Properties, Inc. v. DeRome*, No. 86-2497-0, Order Confirming Report of Commissioners in Partition (D. Kan. May 3, 1989), Ex. B to Miami Tribe's APA Br. (doc. 130-3).

the IBIA's decision that Smith presently holds his interest in Miami Reserve in restricted fee title and that interest is not being held in trust by the United States.

A.    **Administrative Procedures Act**

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."[11]   The APA authorizes the reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," and to "hold unlawful and set aside agency action, findings, and conclusions" that the court finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[12]

The court's scope of review under the arbitrary and capricious standard is narrow and deferential.[13]  A reviewing court must consider whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . .  The court is not empowered to substitute its judgment for that of the agency."[14] The duty of a court reviewing agency action under the arbitrary or capricious standard is to ascertain whether the agency "examined the relevant data and articulated a rational connection between the facts found and the decision made."[15] Because the arbitrary and capricious standard focuses on the rationality of an agency's decision-making process rather than on the rationality of the actual decision, "an agency's action

---

[11] 5 U.S.C. § 702.

[12] 5 U.S.C. §§ 706(1)-(2)(A).

[13] *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

[14] *Id.*

[15] *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994).

8

must be upheld, if at all, on the basis articulated by the agency itself."[16] The inquiry into the agency's decision should be a substantial inquiry that is searching and careful; however, the reviewing court has no power to substitute its own judgment for that of the administrative agency.[17]

In order to determine whether the IBIA's decision, affirming the BIA's approval of Smith's application for gift conveyance but refusing to transfer the interest "in trust," is arbitrary and capricious, the Court must first ascertain whether Smith's present interest in Miami Reserve is held in trust, or is held in restricted fee status. This requires the Court to determine whether the initial conveyance of Miami Reserve was a trust allotment or restricted allotment.

### B.  Trust versus restricted allotments

In *United States v. Bowling*,[18] the Supreme Court discussed the two modes "by which Indians are prevented from improvidently disposing of allotted lands:" trust allotments and restricted allotments.[19] A trust allotment is conveyed by means of a written instrument or certificate, called a trust patent, under which the government holds the land for a designated period of years in trust for the sole use and benefit of the allottee with an agreement to convey at the end of the trust period.[20] In contrast, a restricted allotment is conveyed by means of a patent conveying to the

---

[16]*Id.* at 1575 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)).

[17]*Id.*

[18]256 U.S. 484, 486-87 (1921).

[19]*Id.* at 486.

[20]*U.S. v. Ramsey*, 271 U.S. 467, 470 (1926) (citing *Bowling*, 256 U.S. at 486).

allottee the land in fee, but prohibiting its alienation for a stated period.[21]  Both have the same effect

so far as the power of alienation is concerned.[22]  With respect to both classes of allotments, the

United States possesses a supervisory control over the land and may take appropriate measures to

make sure that it inures to the sole use and benefit of the allottee and his heirs throughout the

original or any extended period of restriction.[23]  In *Bowling,* the Supreme Court stated that Congress

determines which mode is to be followed with respect to the lands of a particular tribe, and this

usually is done in the act directing that the lands be allotted.[24]

### C.        Relevant historical background of Miami Reserve[25]

Smith's property interest in Miami Reserve derives from his status as a relative of Maria

Christiana DeRome.  The infant Maria Christiana DeRome, half-blood Miami Indian, was issued

a restricted fee patent dated December 15, 1859, pursuant to the Treaty of  June 5, 1854 with the

Miami Indians[26] and Section 11 of the Act of March 3, 1859.[27]  The patent for restricted allotment

---

[21]*Id.*

[22]*Id.*

[23]*Bowling*, 256 U.S. at 487.

[24]*Id.*

[25]A more detailed history of the Maria Christiana Allotment, Miami Reserve No. 35, is set forth in *Miami Tribe of Okla. v. United States,* 927 F. Supp. 419, 1424-26 (D. Kan. 1996)*.  See also Miami Tribe of Okla. v. United States*, 5 F. Supp. 2d 1213 (D. Kan. 1998); *State ex rel Graves v. United States*, 86 F. Supp. 2d 1094 (D. Kan. 2000), *Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001); and *Miami Tribe of Okla. v. United States*, 316 F. Supp. 2d 1035 (D. Kan. 2004).

[26]10 Stat. 1093.

[27]11 Stat. 430.

provided that the lands "shall never be sold or conveyed by the grantee or her heirs without the consent of the Secretary of the Interior, for the time being."[28]

Over time, the original 200-acre allotment has been reduced to its present size of approximately 35 acres. After Maria Christiana DeRome died in 1860, her parents sold 120 of the original 200 acres with the approval of the Secretary of the Interior, leaving 80 acres of the original allotment.

In 1986, Midwest Investment Properties, Inc. ("Midwest Investment") filed a partition action in federal district court on a claim of adverse possession to ownership of the unrestricted interest in the remaining 80 acres of the allotment. The United States represented the Indian land owners of Miami Reserve in the partition action, and ultimately reached a compromise with Midwest Investment on the adverse possession claim. As a result of the compromise, the parties presented an agreed Order Confirming Report of Commissioners in Partition to the court with the following provision:

> IT IS THEREFORE BY THE COURT ORDERED, ADJUDGED AND DECREED that partition of the real estate described in the Journal Entry of September 22, 1988, is hereby made as follows:
>
> To the Midwest Investment Properties, Inc., ownership of the following described real estate:
>
> > West 45 acres of the East Half of the Southwest Quarter of Section 13, Township 19 S, Range 24 E, Miami County, Kansas, subject to a 66- foot easement in favor of the East 35 acres.
>
> *To the United States Government by and through the Bureau of Indian Affairs to hold the following described real estate in trust for the benefit of the Indian owners*

---

[28]Admin. Record  (doc. 128-3), p. 44.

*to be vested with restricted fee title in percentages determined by the Bureau of Indian Affairs*, to-wit:

> East 35 acres of the East Half of the Southwest Quarter of Section 13, Township 19 S, Range 24 E, Miami County, Kansas, together with a 66-foot easement over and across the North 66 feet of the West 45 acres of the East Half of the Southwest Quarter of Section 13, Township 19 S, Range 24 E, for the sole purpose of ingress and egress.[29]

The order, entered by the court on May 3, 1989, thus partitioned the 80 acres of Miami Reserve into two tracts: 45 acres to Midwest Investment Properties, Inc., and 35 acres to "the United States Government . . . in trust for the benefit of the Indian owners to be vested with restricted fee title."[30]

### D. Whether Smith's interest in Miami Reserve is held in trust by the United States

Miami Tribe does not appear to dispute that the original land patent issued to Smith's relative, Maria Christiana DeRome, was issued in restricted fee. The Court finds no indication of any language in the record that the original land patent issued to Maria Christiana DeRome contained any provision that the land was to be held by the United States in trust. In the absence of any trust language in the original land patent, the Court finds that the original grant by the United States to Maria Christiana DeRome was conveyed by patent as a restricted allotment rather than a trust allotment.

Since the issuance of the original land patent to Maria Christiana DeRome in 1859, nothing in the record shows that Congress changed the status of Miami Reserve from a restricted allotment to a trust allotment. Instead, Congress reaffirmed in 1982 that the Indian grantees' interests in

---

[29]*Midwest Inv. Properties, Inc. v. DeRome*, No. 86-2497-0, Order Confirming Report of Commissioners in Partition (D. Kan. May 3, 1989), Ex. B to Miami Tribe's APA Br. (doc. 130-3) (emphasis added).

[30]*Id.*

12

Miami Reserve are held in restricted fee. In 1982, Congress enacted Public Law No. 97-344 "for the portioning of certain *restricted* Indian land in the State of Kansas."[31] It provides that "any owner of an interest in the . . . 80 acres . . . known as the Maria Christiana Miami Allotment, lands derived from a patent under the Act of March 3, 1859 (11 Stat. 430)[,] may commence an action in the United States District Court for Kansas to partition the same in kind or for the sale of such land in accordance with the laws of the State of Kansas."[32] It further provides that for the purpose of such partition action, "the Indian owners shall be regarded as vested with an unrestricted fee simple title to their interests in the land and the United States shall be a necessary party to the proceedings. Any conveyance ordered by the court in such proceedings will be made in unrestricted fee simple to non--, Indian grantees and in a *restricted fee* to Indian grantees."[33]

Because the actions of Congress determine whether a land interest granted by allotment is a trust allotment or a restricted allotment,[34] the Court concludes that Smith's present interest in Miami Reserve, derived from the land patent issued to Maria Christiana DeRome, is held as a restricted allotment, and not as a trust allotment.

Miami Tribe argues that Miami Reserve was transferred to the United States Government in trust in 1989 by the Order Confirming Report of Commissioners entered in the *Midwest*

---

[31]96 Stat. 1645 (1982) (emphasis added). Pub. L. 97-344 was enacted Oct. 15, 1982, and amended by Pub. L. 97-428 on Jan. 8, 1983.

[32]Pub. L. No. 97-344(3), 96 Stat. 1645 (1982).

[33]*Id.* (emphasis added).

[34]*See Bowling*, 256 U.S. at 487 ("It rests with Congress to say which of the two modes [trust or restricted allotment] shall be followed in respect of the lands of a particular tribe, and this usually is done in the act directing that the lands be allotted."); *Miami I*, 927 F. Supp. at 1425 n.5 (Miami Reserve's restricted status arises from the terms of the United States' conveyance of the property to Maria Christiana DeRome).

*Investment Properties v. De Rome* partition action. The 1989 Order partitioning and conveying the east 35 acres of the 80 remaining acres of Miami Reserve was conveyed "[t]o the United States Government by and through the Bureau of Indian Affairs to hold the following described real estate in trust for the benefit of the Indian owners to be vested with restricted fee title in percentages determined by the Bureau of Indian Affairs."[35] According to Miami Tribe, the plain language of the order requires Miami Reserve to be held by the United States in trust for the benefit of the Indian owners, which would include Smith.

At first glance, the language of 1989 *Midwest Investment* partition order appears to support Miami Tribe's position that Miami Reserve was placed in trust. The order clearly uses the "in trust" language. However, upon a closer reading, the partition order appears internally inconsistent by conveying the newly-partitioned Miami Reserve to the United States in trust for the benefit of the Indian owners and then providing that the Indian owners are "to be vested with restricted fee title." Although the order transfers Miami Reserve to the United States in trust for the benefit of the Indian owners, the Court does not find that the order permanently changed the individual Indian owners' interest in Miami Reserve from a restricted allotment to a trust allotment. Instead, the Court finds that the trust was created only for a limited purpose and for a limited time. That purpose and time were until the BIA was able to determine the Indian owners' respective ownership percentages in the newly-partitioned Miami Reserve. Thus, any trust created by the 1989 order would have only lasted until such time as the BIA determined the ownership percentages of the Indian owners. This interpretation of the partition order comports with the order's recitation that the Indian owners are "to be vested with restricted fee title" in percentages determined by the BIA at the time those

---

[35] *Midwest Inv. Properties, Inc. v. DeRome*, No. 86-2497-0, Order Confirming Report of Commissioners in Partition (D. Kan. May 3, 1989), Ex. B to Miami Tribe's APA Br. (doc. 130-3).

percentages are determined. The Court thus finds that Smith's interest in Miami Reserve was not permanently changed from a restricted allotment to a trust allotment by the 1989 partition order. Any trust created by that order terminated upon the BIA's determination of the individual Indian owners' respective ownership percentages in the newly-partitioned Miami Reserve. Smith's present interest in Miami Reserve is a restricted fee interest and is not held in trust by the United States.

Having determined that Smith's present interest in Miami Reserve is not held in trust by the United States, the IBIA's decision affirming the BIA's refusal to approve Smith's transfer in trust was not arbitrary and capricious and is affirmed. If Miami Tribe still intends to accept Smith's proposed gift transfer notwithstanding the Court's determination that Smith's interest in Miami Reserve is not held in trust, then it should notify the BIA of its intention to proceed with the transfer and the BIA should act promptly on such request. If Miami Tribe wishes to have the interest Smith transfers to it taken into trust, then it must comply with the procedures set forth in 25 C.F.R. Part 151 for submitting an application for trust acquisition.

## III.    Specific Injunctive Relief Sought to be Compelled

Miami Tribe also requests specific equitable relief under 5 U.S.C. § 706(1) arising from the BIA's alleged breaches of trust and fiduciary duties with respect to Smith's application for gift conveyance. Under section 706(1) of the APA, a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed."[36] Agency action is unlawfully withheld when the

---

[36]5 U.S.C. § 706(1); *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (hereinafter "*SUWA*" ).  *See also Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) ("Through § 706 Congress has stated unequivocally that courts must compel agency action unlawfully withheld or unreasonably delayed").

agency has "failed to take a *discrete* agency action that it is *required to take*.[37] The limitation of required agency action rules out judicial direction of even discrete agency action that is not demanded by law.[38] An agency's general deficiencies in compliance lack the specificity required to compel agency action.[39] The principal purpose of these APA limitations is:

> to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve. If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved-which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management.[40]

Miami Tribe asks for specific injunction relief in the form of an order compelling Defendants to do the following: (1) approve the transfer of Smith's interest in trust and continue to hold Miami Reserve in trust for the benefit of Miami Tribe; (2) recognize and protect Miami Tribe's jurisdiction over Miami Reserve for all activity related to Miami Reserve; and (3) process all future transfers of interests in Indian lands from a member to his or her Indian tribe within 180 days of the submission of the request. The Court will address each request for relief.

---

[37] *SUWA*, 542 U.S. at 64 (emphasis in original).

[38] *Id.*

[39] *Id.* at 66.

[40] *Id.*

**A.   Request that Defendants approve the transfer of Smith's interest in trust and continue to hold Miami Reserve in trust for the benefit of the Miami Tribe and other beneficial Indian owners**

In addition to asking the Court to set aside the BIA's decision as arbitrary and capricious, Miami Tribe also asks for specific equitable relief in the form of an order compelling Defendants to approve Smith's requested transfer in trust and continue to hold Miami Reserve in trust for the benefit of the Miami Tribe and the other beneficial Indian owners.  As discussed above in Section II.D., the Court finds that Miami Reserve is not held in trust by the United States.  Because the only agency action that can be compelled under the APA is that which is *legally* required,[41] and because the Court has found that Smith's interest is not being held in trust, the Court cannot compel Defendants to approve the transfer of Smith's interest in trust and to continue to hold Miami Reserve in trust for the benefit of the Miami Tribe and other beneficial Indian owners.

**B.   Request that Defendants recognize and protect Miami Tribe's jurisdiction over Miami Reserve**

Miami Tribe also requests that the Court compel Defendants to recognize and protect Miami Tribe's jurisdiction over Miami Reserve.  Defendants acknowledge that the Court has already found that Miami Tribe has jurisdiction for the limited purposes of the Indian Land Consolidation Act ("ILCA"), but oppose any request by Miami Tribe to order them to recognize Miami Tribe as having jurisdiction over Miami Reserve for all purposes.  In its reply, Miami Tribe states that it is merely requesting that the Court's ruling that Miami Tribe exercises jurisdiction over Miami Reserve for purpose of the land consolidation policies of the ILCA be incorporated to apply to future Miami Reserve land transactions, not just the Smith transfer.

---

[41]*SUWA*, 542 U.S. at 63.

As the parties recognize, the Court has ruled that for purposes of the policy section of the ILCA, codified at 25 U.S.C. § 2216(a), Miami Tribe qualifies as a tribal government that exercises jurisdiction over Miami Reserve.[42] To the extent that Miami Tribe asks the Court to order the BIA to recognize and follow this ruling on any future applications to transfer an interest in Miami Reserve, the APA does not provide a mechanism for awarding such relief. Under 5 U.S.C. § 706, a court is permitted to "compel agency action unlawfully withheld or unreasonably delayed." Miami Tribe has not shown that the relief sought, i.e., that the BIA be compelled to abide by the Court's determination that Miami Tribe exercises jurisdiction over Miami Reserve when considering any future application for transfer interests in Miami Reserve, constitutes agency action unlawfully withheld or unreasonably delayed.

The Court already issued its decision on Smith's application for gift conveyance that Miami Tribe is a tribal government that exercises jurisdiction over Miami Reserve for purposes of 25 U.S.C. § 2216(a). As such, the Court has already granted a remedy to the extent a remedy is available. Prospective future applications that have not been administratively exhausted are not properly before the Court. It would therefore be inappropriate for the Court to order the BIA to recognize Miami Tribe as has having jurisdiction over Miami Reserve on any future applications.

C.      **Request that Defendants process all future applications for transfers of interests in Miami Reserve within 180 days**

Miami Tribe also requests that the Court order Defendants to process all future applications for transfers of interests in Miami Reserve within 180 days of the submission of the application for approval. It argues that the extended delays it has suffered, in both exhausting the administrative

---

[42]*See Miami Tribe of Okla. v. United States*, 374 F. Supp. 2d 934, 944-45 (D. Kan. 2005).

process and the remand, justify mandating reasonable time deadlines for the future processing of transfers. It contends that the Court has equitable powers to grant prospective relief from wrongful agency conduct.

To establish agency inaction under section 706(1) of the APA, Miami Tribe must show that the BIA failed to carry out a mandatory, nondiscretionary duty that it is required to take.[43] Miami Tribe has not cited and the Court is not aware of any statute or regulation requiring the BIA to process application for transfers of interests in restricted land within 180 days or any other time period. Thus, any request for an order compelling BIA to approve future applications by Indian owners to transfer their interest in Miami Reserve to Miami Tribe with 180 days is not a mandatory, nondiscretionary duty that the BIA is required to take. The Court thus cannot compel Defendants to process all future applications for transfers of interests in Miami Reserve within 180 days as requested by Miami Tribe.

To the extent that Miami Tribe is attacking the BIA's expected refusal to approve future applications to transfer interests in Miami Reserve in a timely manner as a programmatic challenge, that type of challenge is prohibited by the Supreme Court's decision in *Lujan v. National Wildlife Federation*.[44] "[R]espondent cannot seek wholesale improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made."[45] The *Lujan* decision makes clear that the prohibition on programmatic challenges is motivated by institutional limits on courts which constrain their review

---

[43]*SUWA*, 542 U.S. at 64.

[44]497 U.S. 871, 891 (1990).

[45]*Id.*

to narrow and concrete actual controversies.[46] This avoids courts encroaching on the other branches of government and respects the expert judgment of agencies specifically created to deal with complex and technical issues.

## IV.    Miami Tribe's Breach of Trust Claim (Count II)

In their Response in Opposition to Miami Tribe's APA Brief, Defendants ask the Court to dismiss Count II of Miami Tribe's Second Amended Complaint.  They argue that because Miami Reserve is currently restricted fee land and Miami Tribe has not submitted an application to convert the land from restricted fee to trust, Miami Tribe is not entitled to a remedy for alleged breach of trust based upon Defendants' refusal to convert Miami Reserve to trust status.  They further contend that Miami Tribe is not entitled to a remedy for breach of trust because it has not had any jurisdiction over Miami Reserve for decades.

### A.    Breach of Trust Claims Against the Federal Government by an Indian Tribe

In order to bring a lawsuit against the federal government for breach of trust, an Indian tribe must satisfy three threshold requirements.[47]  First, it must bring its claim in a competent court, one statutorily vested with subject matter jurisdiction.[48]  Second, it must establish the government's

---

[46]*See id.* at 891-94.

[47]Nell Jessup Newton, *Enforcing the Federal-Indian Trust Relationship After Mitchell I*, 31 Cath. U. L. Rev. 635, 639 (1982).

[48]*Id.*

consent to be sued under the doctrine of sovereign immunity.[49]  Finally, it must assert a federally recognized right entitling it to the relief requested.[50]

### 1.    Subject matter jurisdiction

In this case, Miami Tribe invokes federal question jurisdiction under 28 U.S.C. § 1331, jurisdiction over civil actions brought by Indian tribes under 28 U.S.C. § 1362, and mandamus jurisdiction under 28 U.S.C. § 1361.  The Court finds that Miami Tribe has invoked statutes that would confer jurisdiction over its breach of trust claim set forth in the Second Amended Complaint.

### 2.    Waiver of sovereign immunity

Next, the Court determines whether the APA provides a general waiver of immunity which would apply to Miami Tribe's breach of trust claim.  Jurisdiction over any suit against the government requires a clear waiver of sovereign immunity by the United States.[51] Additionally, it requires a claim falling within the terms of the waiver.[52] The terms of the government's consent to be sued must be "unequivocally expressed."[53]  This is true even when Indian tribes are suing the government for breach of its trust responsibilities.[54] Thus, jurisdiction over any suit against the

---

[49]*Id.*

[50]*Id.*

[51]*United States v. Mitchell*, 445 U.S. 535, 538-539 (1980) (*"Mitchell I"*); *Gros Ventre Tribe v. United States*, 344 F. Supp. 2d 1221, 1225 (D. Mont. 2004).

[52]*United States v. Mitchell*, 463 U.S. 206, 216-217 (1983) (*"Mitchell II"*).

[53]*Mitchell I*, 445 U.S. at 538.

[54]*United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003).

government requires a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver.[55]

When a plaintiff sues the government for damages, the waiver may be found in a statute such as the Tucker Act,[56] the Indian Tucker Act,[57] or the Federal Tort Claims Act.[58] When a plaintiff sues the government for "relief other than money damages," waiver may be found in the Administrative Procedures Act.[59] Under the APA, 5 U.S.C. § 702, "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party."

Because Miami Tribe's Second Amended Complaint seeks relief "other than money damages" and states a claim that an agency acted or failed to act, it falls within the APA's waiver of sovereign immunity contained in 5 U.S.C. § 702. Therefore, Miami Tribe's action "shall not be dismissed or relief therein be denied on the ground that it is against the United States."[60] The United

---

[55]*Id.*

[56]28 U.S.C. § 1491.

[57]28 U.S.C. § 1505.

[58]28 U.S.C. § 2671.

[59]*See State of New Mexico v. Regan*, 745 F.2d 1318, 1321 (10th Cir. 1984) (Section 702 of the APA "has been construed as granting the United States' consent to suit in cases involving agency action, subject however, to the proviso that the action is not one for 'money damages.'").

[60]5 U.S.C. § 702.

States has waived immunity from suit under 5 U.S.C. § 702 of the APA.[61]  The breach of trust claim

brought by Miami Tribe falls within the terms of that waiver.  The Court thus concludes that the

APA provides a general waiver of sovereign immunity which would apply to Miami Tribe's breach

of trust claim.

### 3.    Federally recognized right to relief

Finally, Miami Tribe must assert a federally recognized right entitling it to relief.  In

determining whether Miami has a federally recognized right, the Court first must decide whether

a general fiduciary relationship exists in a particular area between the government and Miami

Tribe.[62]  Then, it must determine whether, in the context of that relationship, the government has

breached any specific fiduciary responsibilities.[63]  It makes this determination by considering the

government conduct at issue in light of the requirements of the statutes and regulations that create

the general fiduciary relationship in the first place.[64]  The court must examine whether a statute,

treaty, or other fundamental document, creates a trust relationship, the nature of the relationship, and

---

[61]*See Cobell v. Norton*, 240 F.3d 1081, 1094 (D.C. Cir. 2001) (APA waives federal officials' sovereign immunity for actions "seeking relief other than money damages" involving a federal official's action or failure to act).

[62]*Navajo Nation v. United States,* 263 F.3d 1325, 1339 (Fed. Cir. 2001) (Shall, J. concurring in part and dissenting in part), *reversed on other grounds*, 537 U.S. 488 (2003).

[63]*Id.*

[64]*See Mitchell II*, 463 U.S. at 224 (noting that "the statutes and regulation now before us . . . establish a fiduciary relationship and define the contours of the United States' fiduciary responsibilities."); *White Mountain Apache Tribe v. United States*, 249 F.3d 1364, 1377-80 (Fed. Cir. 2001) (determining, after finding a fiduciary relationship, what the government's specific obligations are and whether the statute that created the relationship altered the general law of trusts in any way); *Pawnee v. United States*, 830 F.2d 187, 191 (Fed. Cir. 1987) (stating that the existence of a "general fiduciary relationship does not mean that any and every claim by the Indian lessor necessarily states a proper claim for breach of the trust").

whether the general law of trusts has been altered in any particular way, either by the imposition of additional obligations or by the modification of existing obligations.[65]  Even if a fiduciary obligation does exist, the tribe asserting the claims for breach of trust must link any breach to a specific statutory or regulatory provision.

In *United States v. Mitchell*, ("*Mitchell I*"),[66] the seminal case dealing with the fiduciary trust obligations owed by the government to federally recognized Indian tribes, the Supreme Court recognized that certain statutes, in that case the General Allotment Act,[67] can create a limited trust relationship between the United States and Indian allottees.  The Supreme Court later revisited the Indian allottees' claim in *Mitchell II*,[68] where it found statutes and regulations established the comprehensive responsibility of the government in managing the harvesting of Indian timber, with virtually every stage of the process under federal control.[69]  From these statutes and regulations, the Court determined that "a fiduciary relationship necessarily arises when the [g]overnment assumes such elaborate control over forests and property belonging to Indians."[70]  The Court stated that the very statutes and regulations that create the fiduciary relationship also "define the contours of the United States' fiduciary responsibilities."[71]

---

[65]*White Mountain Apache Tribe*, 249 F.3d at 1380.

[66]445 U.S. 535, 542 (1983).

[67]Section 5 of the General Allotment Act obliged the United States to "hold the land . . . in trust for the sole use and benefit of the [allottee]." 25 U.S.C. § 348.

[68]463 U.S. 206, 224 (1983).

[69]*Id.* at 222 (citations omitted).

[70]*Id.* at 225.

[71]*Id.* at 224.

While *Mitchell I* and *Mitchell II* involved a tribe's claim for money damages under Tucker Act and the Indian Tucker Act, other courts have permitted breach of trust causes of action against the federal government in cases where an Indian tribe sought non-monetary relief under the APA.[72] In *Morongo Band of Mission Indians v. FAA*,[73] the Ninth Circuit, however, limited the government's duty so that unless a specific duty has been placed on the government with respect to the Indian tribe, the government's responsibility is discharged by the agency's compliance with general regulations and statutes not specifically aimed at protecting Indian tribes.[74]

## B.  Whether Miami Tribe has asserted a federally recognized right entitling it to relief

Courts recognize a fiduciary relationship between the government and an Indian tribe when the government wields a high degree of control or supervision over property or assets belonging to Indians or an Indian tribe.[75]  In those cases, all the necessary elements of a common-law trust are present: a trustee (the government), a beneficiary (the Indian tribe), and a trust corpus (the property

---

[72]*See Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 574-75 (9th Cir. 1998) (an APA case wherein the court recognized that the United States bears a trust responsibility to Indian tribes); *Cobell v. Norton*, 240 F.3d 1081, 1094-95 (D.C. Cir. 2001) ("That plaintiffs rely upon common law trust principles in pursuit of their claim is immaterial, as here they seek specific relief other than money damages, and federal courts have jurisdiction to hear such claims under the APA.").

[73]161 F.3d 569, 574-75 (9th Cir. 1998).

[74]*Id.* at 574.

[75]*Mitchell II,* 463 U.S. at 225 ("a fiduciary relationship necessarily arises when the Government assumes such elaborate control over forests and property belonging to Indians. All of the necessary elements of a common-law trust are present: a trustee (the United States), a beneficiary (the Indian allottees), and a trust corpus (Indian timber, lands, and funds).") (citing *Navajo Tribe of Indians v. United States*, 624 F.2d 981, 987 (Ct. Cl. 1980)).

or asset).[76] Where the federal government takes on or has control or supervision over tribal monies or properties, the government has a fiduciary relationship to the Indian owners of the property.[77]

In this case, Miami Tribe alleges that Defendants stand in a fiduciary relationship with respect to the requested transfer of Smith's interest in Miami Reserve and with respect to protecting the trust status of Miami Reserve and the jurisdiction of the Miami Tribe over Miami Reserve. According to Miami Tribe, Defendants have breached their trust obligations and fiduciary duties by the BIA's refusal to approve Smith's application, refusal to approve the transfer of Smith's interest in trust for the benefit of Miami Tribe, refusal to timely consider and act on Smith's appeal of the denial of his request for transfer, failure to protect and recognize Miami Tribe's jurisdiction over Miami Reserve, and failure to maintain and hold Miami Reserve in trust for the benefit of its Indian owners.

The Court has determined that Miami Reserve is not being held in trust by the United States and, except for a brief period of time after the 1989 partition order, has never been held in trust by the United States. Because Miami Reserve was originally conveyed to Smith's relative as a restricted allotment, and its status as a restricted allotment has never changed, Defendants do not have any fiduciary duties with respect to its management that may arise from a trust relationship. This would include any fiduciary duty to maintain the status of Miami Tribe as a trust allotment. Without a trust relationship, the Court looks to whether Miami Tribe can base its breach of trust claim on a statute, regulation, or treaty conferring fiduciary duties upon the government.

---

[76]*Mitchell II,* 463 U.S. at 225.

[77]*Navajo Tribe*, 624 F.2d at 987.

The Court notes that all Miami Tribe's remaining allegations of breaches of fiduciary duties are based upon the BIA's actions or inactions as they relate the performance of its duties as an administrative agency, including the duty to consider and decide applications for approval to transfer interests in restricted Indian land. The Court finds that the actions or inactions of an administrative agency in carrying out its agency duties do not constitute a valid basis for Miami Tribe's breach of trust claim. While the administrative agency's duties may be statutorily required, they are not duties the breach of which would necessarily give rise to a breach of trust claim. The remedy for breach of an administrative agency's duties is provided by the APA by way of judicial review of the agency's decision or by compelling agency unlawfully withheld. These alleged breaches committed by an administrative agency while carrying out its agency duties cannot by themselves constitute the basis for a breach of a trust duty by the government to an Indian tribe.

In the absence of any fiduciary or trustee-beneficiary relationship between the government and Miami Tribe, the Court determines that Miami Tribe has not asserted any federally recognized right that would entitle it to relief. Miami Reserve is not being held in trust, nor has ever been held in trust except for a brief period of time after the 1989 partition order. Miami Tribe's allegations of breaches that arise from the agency's actions or inactions as they relate the performance of its duties, including the duty to consider and decide applications for approval to transfers interests in restricted Indian land, also do not constitute an actionable basis for a breach of trust claim. As Miami Tribe has not asserted any duty on the part of Defendants, that, if breached, would constitute a valid basis for its breach of trust claim against Defendants, it cannot recover on that claim. The Court must therefore dismiss Miami Tribe's breach of trust claim set forth in Court II of its Second Amended Complaint.

**IT IS THEREFORE ORDERED THAT** the October 10, 2008 Order of the IBIA affirming in part and vacating in part the BIA's October 23, 2007 decision is affirmed.

**IT IS FURTHER ORDERED THAT** Miami Tribe's claim for breach of trust (Count II) is dismissed.

**IT IS SO ORDERED**.

Dated at Kansas City, Kansas on this 4th day of January, 2010.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:    All counsel